IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CHRISTOPHER WINDERLIN,<br><br>Plaintiff,<br><br>v.<br><br>OFFICER KUNZ[1] (Badge No. 376), individually and as a police officer for Sandy City, SANDY CITY, a municipal corporation, and JOHN and JANE DOES 1-10,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND DENYING DEFENDANTS' MOTION TO COMPEL**<br><br>Case No.  2:08 CV 512 DN<br><br>Magistrate Judge David Nuffer |

This order resolves two motions,[2] finding that issuance of a protective order is appropriate and that an order compelling discovery should not issue.  The dispute centers around the records of Plaintiff's incarceration by the Utah Department of Corrections.  The court orders the records will not be produced.

**Introduction**

This lawsuit arises out of the alleged mistreatment of Plaintiff Christopher Winderlin by the Sandy City Police Department.[3]  On October 15, 2007, Mr. Winderlin's girlfriend, LeeAnna Eaves, called 911 and was taken to the Sandy City police station by her grandmother to report an assault by Mr. Winderlin.[4]  While LeeAnna Eaves was at the police station, Mr. Winderlin called

---

[1] The correct spelling of the officer's name is "Kunze."  Therefore, the court uses this spelling in its decision.

[2] Plaintiff's Motion for Protective Order, docket no. 18, filed November 21, 2008; Defendants' Motion to Compel, docket no. 22, filed December 9, 2008.

[3] Defendants' Memorandum in Opposition to Plaintiff's Motion for Protective Order and Memorandum in Support of Motion to Compel (Defendants' Memorandum 23) at 1, docket nos. 23 & 24, filed December 9, 2008.

[4] *Id.* at 2 (citing Complaint ¶¶ 10-12, filed July 2, 2008 as part of docket no. 2; Witness Statement of LeeAnna Eaves at 1-3, attached to Defendants' Memorandum 23 as Exhibit A; Affidavit of Officer Kunze, attached to Defendants' Memorandum 23 as Exhibit B).

her cell phone, which was answered by Officer Kunze.[5] Officer Kunze suggested Mr. Winderlin come to the police station to give a statement, and Mr. Winderlin subsequently arrived.[6]

Prior to Mr. Winderlin's arrival at the police station, LeeAnna Eaves told Officer Kunze that Mr. Winderlin had fired shots at law enforcement officers in the past.[7] Officer Kunze also stated that she viewed Mr. Winderlin's criminal record.[8] Officer Kunze did not view Mr. Winderlin's Department of Corrections records prior to his arrest.[9]

When Mr. Winderlin arrived at the police station, he was arrested and handcuffed behind his back by Officer Kunze.[10] Mr. Winderlin had recently undergone shoulder surgery, and alleges the surgery failed because Officer Kunze handcuffed him behind his back, as opposed to handcuffing him in front with the use of a prisoner transport belt.[11] He alleges Officer Kunze was fully aware of the surgery and his physical condition before he was handcuffed behind his back.[12] He alleges severe pain and that his complaints regarding pain were trivialized and ignored.[13]

---

[5] Defendants' Memorandum 23 at 2 (citing Complaint ¶¶ 13-16).

[6] Defendants' Memorandum 23 at 2.

[7] Kunze Deposition at 11, attached as Exhibit C to Defendants' Memorandum 23.

[8] *Id.* at 9-10.

[9] *Id.*

[10] Defendants' Memorandum 23 at 2.

[11] Plaintiff's Memorandum in Opposition to Defendants' Motion to Compel and Reply Memorandum in Support of Plaintiff's Motion for Protective Order (Plaintiff's Memorandum 32) at 3-5, docket nos. 32 & 33, filed December 22, 2008; Plaintiff's Memorandum in Support of Motion for Protective Order at 4, docket no. 19, filed November 21, 2008.

[12] Complaint ¶¶ 17-21.

[13] *Id.* ¶¶ 30-36.

**Discovery Dispute**

On September 15, 2008, Defendants requested Mr. Winderlin sign a release authorizing the Utah Department of Corrections to produce any records relating to Mr. Winderlin.[14] On October 17, 2008, defense counsel made a second request for the release, and set a deadline of October 24, 2008.[15] Defense counsel stated Defendants would "likely file a motion for the records" if no response was received by the deadline.[16]

On November 3, 2008, counsel for both parties exchanged multiple emails.[17] Plaintiff's attorney requested to know why defense counsel believed Mr. Winderlin's Utah Department of Corrections records were relevant or would likely lead to discoverable information.[18] Defense counsel responded that the records "will help establish what Mr. Winderlin's claimed damages are (or aren't)" and "may also be admissible to show a pattern of violence with women and/or police officers."[19] Ms. Carter did not find Ms. White's explanation satisfactory and declined to authorize release of the records.[20]

On November 7, 2008, Defendants issued a Subpoena to the Department of Corrections to produce Mr. Winderlin's records.[21] On November 21, 2008, Plaintiff filed a Motion for a Protective Order to prevent the release of the Department of Corrections records.[22] On

---

[14] Letter from Margaret Cahoon dated September 15, 2008, attached as Exhibit D to Defendants' Memorandum 23.

[15] Letter from Heather White dated October 17, 2008, attached as Exhibit E to Defendants' Memorandum 23.

[16] *Id*.

[17] Emails dated November 3, 2008, attached as Exhibit F to Defendants' Memorandum 23.

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] Department of Corrections Subpoena, attached as Exhibit G to Defendants' Memorandum 23.

[22] Plaintiff's Motion for Protective Order, docket no. 18, filed November 21, 2008.

December 9, 2008, Defendant filed a Motion to Compel disclosure of all Department of Corrections records regarding Plaintiff.[23]

**Issues**

Two issues are presented on these "mirror image" motions. **(1)** Are Plaintiff's Utah Department of Corrections ("UDC") records relevant, and therefore discoverable, under Rule 26(b)(1) of the Federal Rules of Civil Procedure?; and **(2)** Is a protective order pursuant to Fed. R. Civ. P. 26(b)(2)(C) warranted to prevent release of the Plaintiff's UDC records, or should the Court compel discovery pursuant to Rule 26(b)(1)?

DISCUSSION

Officer Kunze did not have knowledge of Plaintiff's UDC records at the time of the arrest and, thus, could not have relied on the information contained in the UDC records. Therefore, Plaintiff's UDC records are not relevant to determining the reasonableness of Officer Kunze's handcuffing Plaintiff behind his back. The records are also not relevant to determining Plaintiff's damages. The fact that Plaintiff has been convicted, and the dates of incarceration, can be obtained elsewhere and those facts, at most, are what are relevant for the purpose of calculating damages.

"[T]he scope of discovery under the federal rules is broad and . . . 'discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues.'"[24] Rule 26 permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . .Relevant information need not be admissible at the trial if the discovery appear reasonably calculated to lead to the discovery of

[23] Defendants' Motion to Compel, docket no. 22, filed December 9, 2008.

[24] *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir.1995) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

relevant evidence."[25] Although "[r]elevant information need not be admissible at the trial," the discovery request must "appear[] reasonably calculated to lead to the discovery of relevant evidence."[26]

Defendants make the following arguments with respect to the relevancy of the UDC records:

> (1) The UDC records may establish a history of violence against women and/or police officers, and show that Officer Kunze's handcuffing Plaintiff behind his back was reasonable;
>
> (2) The UDC records may establish Plaintiff's bias against police officers as the motivation for this suit; and
>
> (3) The UDC record may be used to evaluate Plaintiff's claimed damages.[27]

As support for their first argument Defendants cite case law supporting the proposition that a suspect's criminal history is relevant to determining the reasonableness of a police officer's actions as the records may provide insight into the officer's state of mind.[28] In both cases cited by Defendants, the Court found that the criminal history *known* to a police officer at the time an official action was taken was relevant in determining the reasonableness of the officer's actions.[29] In the present case, Plaintiff's criminal history *known* to Officer Kunze at the time of Plaintiff's arrest, [30] including the statement by Plaintiff's girlfriend LeeAnna Eaves

---

[25] Fed. R. Civ. P. 26(b)(1).

[26] Id.

[27] *See* Defendants' Reply Memorandum in Support of Defendants' Motion to Compel (Defendants' Reply Memorandum 36) at 2-5, docket no. 36, filed December 31, 2008.

[28] *See id.* at 2 (citing *Bey v. Del Fava*, 2008 WL 1844297 (D.N.J. Apr. 23, 2008); *Caraway v. State*, 255 S.W.3d 302, 307-308 (Tex. Ct. App. 2008)).

[29] *Bey v. Del Fava*, 2008 WL 1844297, at *5 (finding that police officers' actions in executing a search warrant were reasonable when the officer knew the criminal history of individuals present at Plaintiff's home); *Caraway v. State*, 255 S.W.3d at 308 (finding a police officer's detention during a traffic stop reasonable when the officer requested consent to search the appellant's vehicle shortly after receiving information regarding the appellant's criminal history).

[30] Kunze Deposition pp. 9-10, attached as Exibit C to Defendants' Memorandum 23.

regarding Plaintiff's past criminal behavior,[31] is relevant in determining the reasonableness of Officer Kunze's actions in arresting Plaintiff. However, UDC records unknown to Officer Kunze at the time of arrest would have no bearing on Officer Kunze's decision to handcuff Plaintiff behind his back, and are, thus, irrelevant.

Next, as support for their second argument Defendants cite case law supporting the proposition that criminal history may establish motive for bringing a suit due to bias against law enforcement officers.[32] In both cases cited by Defendants, the Court found that evidence of the Plaintiff's criminal history was admissible to the extent the criminal history showed prior adversarial contacts between the Plaintiff and a particular police officer[33] or a particular police department[34] involved as defendants in the lawsuit. Other decisions have distinguished these cases and therefore found inadmissible, evidence of a plaintiff's prior criminal history in which the Defendant officers were not involved,[35] or in which there was no evidence that the Plaintiff was biased toward the officers with whom the Plaintiff had prior interactions.[36] In the present case, Defendants do not argue that Plaintiff's UDC records will show any prior interactions

---

[31] *Id.* at 11.

[32] *See* Defendants' Reply Memorandum 36 at 3 (citing *Pittsley v. Warish*, 927 F.2d 3, 9-10 (1st Cir. 1991); *Heath v. Cast*, 813 F.2d 254, 259 (9th Cir. 1987)).

[33] *Pittsley v. Warish*, 927 F.2d 3, 9-10 (1st Cir. 1991) (finding evidence of Plaintiff's prior gun possession charges and motor vehicle violations were "probative in demonstrating motive and bias given that Officer Warish arrested [Plaintiff] and testified against her at trial which led to her conviction").

[34] *Heath v. Cast*, 813 F.2d 254, 259 (9th Cir. 1987) (finding evidence of Plaintiff's prior arrests and his brother's misdeameanor convictions were "probative of their bias against the Newport Beach police and of [Plaintiff's] motive in bringing this action").

[35] *See, e.g.* *Brandon v. Village of Maywood*, 179 F.Supp.2d 847, 854 (N.D. Ill. 2001)(stating that Plaintiff's "Cook County arrest is clearly irrelevant to [Plaintff's] claims against Maywood police officers in this case. Unlike *Pittsley*, there is no evidence any of the police officers who are defendants in this action had any involvement . . . .").

[36] *Gallagher v. City of West Covina* 2002 WL 1770761 (C.D. Cal. July 29, 2002)(stating that "in *Heath*, the parties stipulated that the Plainttif was biased toward the same officers…In the present case, while Plaintiff has had multiple contacts with law enforcement over the years, there is no evidence . . . that Plaintiff was biased towards these officers).

between Plaintiff and Officer Kunze or the Sandy City Police Department which may have motivated Plaintiff's present suit against Defendants.[37] Therefore, Plaintiff's UDC records are not relevant to establishing Plaintiff's motives.

Finally, as support for their third argument Defendants cite case law supporting the proposition that criminal history may negatively affect earning capacity, and would, therefore, be relevant in calculating damages.[38] While convictions and prison time may negatively affect Plaintiff's future employment prospects, the UDC records have far more information than that. There are less intrusive means to establish Plaintiff's convictions and prison time than through discovery of the UDC records.

Plaintiff requests the Court issue a protective order prohibiting discovery of Plaintiff's UDC record, or, in the alternative, an in camera review of the UDC records, and that a protective order be issued against production of those records that are not relevant.[39] A protective order may be issued "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[40] A court may take a number of actions to protect a party including "forbidding the disclosure or discovery."[41] The burden is on the movant to establish that discovery should be limited[42] and Plaintiff has met that burden.

Plaintiff made a good faith effort to confer with Defendants to resolve the discovery dispute in an email exchange with defense counsel on November 3, 2008.[43] Information

---

37 Defendants' Reply Memorandum 36 at 1.

38 *Id.* at 4 (citing *In re Marriage of Rottscheit*, 664 N.W.2d 525, 543 (Wis. 2003).

39 Plaintiff's Memorandum 32 at 4-6.

40 Fed. R. Civ. Pro. 26(c)(1).

41 *Id.*

42 *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).

43 Emails dated November 3, 2008 attached as Exhibit F to Defendants' Memorandum 23.

regarding Plaintiff's criminal history which may be relevant to Defendants' defenses may be obtained by less invasive means with less likelihood of disclosure of prejudicial and irrelevant information than Plaintiff's UDC records, which may contain "very sensitive and personal information."[44] Thus, the availability of Plaintiff's criminal history without accessing the UDC records, and the potentially prejudicial and irrelevant nature of the UDC records, support a protective order to prohibit discovery of Plaintiff's UDC records pursuant to Rule 26(b)(2)(C).[45]

**ORDER**

IT IS HEREBY ORDERED that Plaintiff's motion for a protective order[46] is GRANTED.

IT IS FURTHER ORDERED that Defendant's motion to compel[47] disclosure of all Department of Corrections records regarding Christopher Winderlin is DENIED.

Dated this 29th day of January, 2009.

BY THE COURT:

David Nuffer, U. S. Magistrate Judge

[44] Plaintiff's Memorandum 33 at 6.

[45] Fed. R. Civ. P. 26(b)(2)(C).

[46] Plaintiff's Motion for Protective Order, docket no. 18, filed November 21, 2008.

[47] Defendants' Motion to Compel, docket no. 22, filed December 9, 2008.